```
           UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF WEST VIRGINIA
                   AT CHARLESTON
```

ROCKWELL MINING, LLC, and
BLACKHAWK LAND AND RESOURCES, LLC,

      Plaintiffs,

v.                           Civil Action No. 2:20-cv-00487

POCAHONTAS LAND, LLC,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is Plaintiff Rockwell Mining, LLC's ("Rockwell") Motion for Partial Judgment on the Pleadings (ECF 39), filed February 19, 2021. Defendant Pocahontas Land, LLC ("Pocahontas Land" sometimes referred to as "Poca Land") responded in opposition (ECF 41) on March 5, 2021, to which Rockwell replied (ECF 44) on March 17, 2021.

### I. Background

Rockwell and Blackhawk Land and Resources, LLC ("Blackhawk Land and Resources" sometimes referred to as "BLR") instituted this action on July 17, 2020. See ECF 1. The complaint alleges the following. On July 1, 1937, Loup Creek Colliery Company -- the original lessor -- leased approximately

10,000 acres in Wyoming and Boone Counties for coal mining purposes to The Koopers Coal Company -- the original lessee -- by way of an agreement entitled Indenture of Lease ("1937 Lease"). See id. ¶ 9. Article Sixteen of the 1937 Lease pertinently provides:

> The Lessee further covenants and agrees that it will not mortgage, nor will it assign, convey, lease, under-let, sublet, or set over any of its estate, interest, or term, in whole or in part, in the hereby leased premises or their appurtenances, or any part thereof to any person or persons whatsoever, or corporation whatsoever, without the license or consent of the Lessor, its successor or assigns in writing under seal for that purpose being first had and obtained, and in case of such assignment or transfer, the transferee shall assume in writing all obligations of the Lessee hereunder in a form satisfactory to the [Lessor[1]].

Id. ¶ 10. As a result of various assignments and/or conveyances Pocahontas Land is the current successor lessor, and Rockwell is the current successor lessee under the 1937 Lease.[2] See id. ¶¶

---

[1] The complaint alleges that Article Sixteen of the 1937 Lease provides that "the transferee shall assume in writing all obligations of the Lessee hereunder in a form satisfactory to the Lessee." (Emphasis added). This appears to be a typographical error inasmuch as Article Sixteen of the 1937 Lease itself provides that "the transferee shall assume in writing all obligations of the Lessee hereunder in a form satisfactory to the Lessor." See ECF 39-1, Ex. 2 at 15 (emphasis added).

[2] Loup Creek Company, the original lessor, assigned its rights to Pocahontas Land Corporation in 1965. Pocahontas Land Corporation converted into Pocahontas Land, LLC, in 2020. Pocahontas Land is the current lessor. In 1941 Koppers Coal Company, the original lessee, assigned its rights to Eastern Gas and Fuel Associates, which later assigned its rights to Eastern

11, 12. Blackhawk Land and Resources is a sublessee from Rockwell and a sublessor to a third party, Coronado Coal II, LLC, on a sub-portion of a single coal seam known as the "Powellton A" seam, which is covered by the 1937 Lease. See ECF 39-1 at 4.

On December 21, 2015, Pocahontas Land Corporation, Rockwell, and Blackhawk Land and Resources entered into a Consent and Amendment Agreement, wherein the parties agreed to amend Article Sixteen of the 1937 Lease to expand the consent restriction to include as follows:

> With respect to Article Sixteen of the Pocahontas Land Lease, Poca Land, BLR, and Rockwell agree that the Pocahontas Land Lease is amended hereby to provide that a transfer of control of the lessee therein shall be an event of assignment requiring Poca Land's consent, and shall be deemed to have occurred whenever 50.1% or more of the lessee's capital stock or membership interests shall become subject to the direct or indirect control of persons or entities, some or all of whom are different than those persons or entities which directly or indirectly control that portion of the lessee's capital stock or membership interests as of the effective date of this Consent. Notwithstanding this amendment to the Pocahontas Land Lease, Poca Land hereby acknowledges and agrees that it shall not unreasonably withhold its consent to an assignment of the Pocahontas Land Lease or the BLR-Coronado Sub-Sublease where a transfer of control as set forth above occurs provided the assignee has

---

Associated Coal Corporation in 1966. In 2005, Eastern Associated Coal Corporation converted into Eastern Associated Coal, LLC, which assigned its rights to Rockwell in October 2015. Rockwell then sublet a portion of its rights under the lease to Blackhawk Land and Resources in December 2015.

> reasonable coal mining experience and reasonable financial standing.

**See id.**, ¶¶ 14, 15; **see also** ECF 39-1, Ex. 1 at 7.

On June 1, 2020, Blackhawk Mining, LLC, the parent corporation of Rockwell and Blackhawk Land and Resources, merged with BH Mining Merger Sub, LLC, a wholly-owned subsidiary of Sev.en US Met Coal Inc. ("Sev.en"). **See id.**, ¶ 16. As a result of the merger, Blackhawk Mining, LLC, became the only surviving entity and thus became wholly-owned by Sev.en. **See id.** At the time of the merger, Rockwell and Blackhawk Land and Resources were each wholly-owned subsidiaries of Blackhawk Sub, LLC, which was a wholly-owned subsidiary of Blackhawk DRE, LLC, which was a wholly-owned subsidiary of Blackhawk Mining, LLC. **See id.**, ¶ 18. Respecting Blackhawk Mining, LLC, the complaint alleges:

> On July 15, 2019, Blackhawk Mining, LLC, a Kentucky limited liability company ("Old Blackhawk"), and substantially all of its wholly-owned subsidiaries filed voluntary petitions for reorganization under Chapter 11 of the United States Bankruptcy Code (the "Reorganization"). Under the Reorganization, and in satisfaction of the first lien and second lien loans of Old Blackhawk and its subsidiaries, which were canceled in full in connection with the Reorganization, each first lien lender and second lien lender received its pro rata share of 100% of a new ultimate parent company, Blackhawk Mining, LLC, ("New Blackhawk") following the October 31, 2019 effective date of Reorganization. As a result of the Reorganization, all persons or entities that owned voting interests in Old Blackhawk as of December 21, 2015, ceased to own any membership interest in New Blackhawk.

4

Id., ¶ 18.

It is further alleged that "[t]he transaction between Blackhawk Mining, LLC (a/k/a 'New Blackhawk') and Sev.en . . . therefore did not result in a 50.1% or more of either Rockwell or Blackhawk Land [and Resources]'s capital stock or membership interests becoming under the direct or indirect control of persons or entities, some or all of whom were different than those persons or entities which directly or indirectly controlled that portion of Rockwell or Blackhawk Land [and Resources]'s capital stock or membership interests as of the effective date of the" 2015 Consent and Amendment Agreement. Id., ¶ 19.

Although it is alleged that the merger did not necessitate Pocahontas Land's consent, on May 23, 2020, representatives of Blackhawk Mining, LLC, provided Pocahontas Land with "substantial information regarding the transaction, as well as . . . detailed financials on Blackhawk Mining, LLC and information on Sev.en Energy's experience in coal mining." Id., ¶ 20. On June 11, 2020, Pocahontas Land sent Rockwell and Blackhawk Mining, LLC, a notice of default (1) asserting its consent was required prior to the consummation of the Sev.en and Blackhawk Mining, LLC, merger and reserving its right to terminate the 1937 Lease as a result of the breach;

5

(2) acknowledging receipt of the information surrounding the merger provided by Blackhawk Land, LLC, but asserting it had insufficient time to consider whether to consent; and (3) contending such information was deficient regarding Sev.en's coal mining experience and Blackhawk Mining, LLC's, capitalization and financial standing. See id., ¶¶ 21, 22, 23, 24, 29.

It is alleged, however, that Pocahontas Land's concerns were misplaced insofar as it "incorrectly presuppose[ed] that Sev.en would have any involvement with the ongoing coal mining operations of the current lessees, being Rockwell and Blackhawk Land [and Resources]" and sufficient information regarding Blackhawk Mining, LLC's, financial standing was provided. See id., ¶¶ 25, 30.

Even assuming Pocahontas Land's consent was required prior to the merger's consummation, it is alleged "there was no reasonable basis to withhold that consent based on the coal mining experience of the actual operators of the 1937 Lease, which was and remains Rockwell and Blackhawk Land [and Resources]" or based on Blackhawk Mining, LLC's, financial situation. See id., ¶¶ 28, 33. On June 22, 2020, Blackhawk Mining, LLC, responded to Pocahontas Land stating it had provided sufficient information regarding Sev.en's mining

6

industry experience and Blackhawk Mining, LLC's, capitalization. See id., ¶ 34. That same date, Pocahontas Land allegedly contacted Blackhawk Mining, LLC, "and indicated that it would provide [its] consent to the assignment of the 1937 Lease if Blackhawk Mining agreed to update certain terms in the 1937 Lease and renegotiate a higher royalty provision due Poca Land under the 1937 Lease." Id., ¶ 35.

Based on these allegations, Rockwell and Blackhawk Land and Resources seek declaratory judgment pursuant to W. Va. Code § 55-13-1. See id., ¶¶ 36-61. Specifically, they request a declaration (1) "that the transaction between Sev.en . . . and Blackhawk Mining, LLC, did not require Rockwell and/or Blackhawk Land [and Resources] to obtain the consent of Poca Land under Article Sixteen of the 1937 Lease, as amended by the 2015 Consent [and Amendment Agreement] or alternatively, that to the extent Poca Land's consent was required, it had no reasonable basis to withhold that consent"; and (2) "that Poca Land cannot terminate the 1937 Lease as a result of the Sev.en . . . and Blackhawk Mining, LLC transaction." Id. at 11.

On October 2, 2020, Pocahontas Land answered the complaint and asserted counterclaims against Rockwell and Blackhawk Land and Resources, seeking declaratory judgment regarding reformation of the 1937 Lease's royalty clause and a

7

declaration that a direct or indirect transfer of control of Rockwell occurred as a result of the merger transaction between Blackhawk Mining, LLC, and Sev.en, requiring Pocahontas Land's consent under the 1937 Lease.[3]

On February 19, 2021, Rockwell moved for partial judgment on the pleadings, seeking a declaration that Article Sixteen of the 1937 Lease does not and cannot validly impose any consent requirement upon it under the Supreme Court of Appeals of West Virginia's decision in Easley Coal Co. v. Brush Creek Coal Co., 112 S.E. 512, 91 W. Va. 291 (1922).  The court notes, however, that the declaration Rockwell seeks in its motion differs from the declaration it seeks in its complaint.  In its motion, Rockwell is contending -- for the first time -- that the plain and unambiguous language of Article Sixteen does not expressly extend the consent requirement to any party aside from the original lessee and thus cannot extend to Rockwell inasmuch as it never expressly adopted the same.[4]  Alternatively, Rockwell

---

[3] Pocahontas Land also brought third-party claims against Hampden Coal, LLC, Blackhawk DRE, LLC, and Blackhawk Mining, LLC, which have since been voluntarily dismissed.  See ECF 29.

[4] Conversely, in its complaint, Rockwell alleges that because the June 1, 2020, merger did not constitute an assignment that would trigger the consent restriction set forth in Article Sixteen of the 1937 Lease, as amended, Pocahontas Land's consent prior to the merger's consummation was unnecessary. See ECF 1, ¶¶ 45-48. Pocahontas Land denies this allegation in its answer.  See ECF 11, ¶¶ 45-48.  Rockwell's complaint is devoid, however, of any allegation that Rockwell

asserts that even if it is bound by the consent requirement, Article Sixteen cannot require its consent for a merger that occurred wholly above it in a corporate chain of ownership.

Pocahontas Land responds that Rockwell's unpled interpretation of the 1937 Lease "is readily refuted by the language of the Lease, the leasehold history, and Rockwell's own allegations." ECF 41 at 9.  Pocahontas Land avers the consent assignment clause in this case is distinguishable from that in <u>Easley</u> and explicitly binds Rockwell.  Additionally, Pocahontas Land contends Rockwell's alternative assertion that the consent requirement cannot apply to the merger transaction (1) is refuted by the facts alleged in the pleadings and the terms of Article Sixteen as amended in 2015, and (2) requires evidentiary development.

## II.  Governing Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  A Rule 12(c) motion "is assessed under

---

was never bound by the consent restriction as it now asserts in its motion.

the same standard that applies to a Rule 12(b)(6) motion." Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009); Independence News, Inc. v. City of Charlotte, 568 F.3d 148, 154 (4th Cir. 2009) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)).  The court thus views "the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the non-moving party." Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc., 932 F.3d 268, 274 (4th Cir. 2019).  "A motion for judgment on the pleadings under Rule 12(c) may be granted only if all material issues can be resolved on the pleadings by the district court; otherwise, a summary judgment motion or full trial is necessary."  5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1368 (3d ed.).

The court must accept all well pleaded factual allegations in the non-moving party's pleading as true and reject all contravening assertions in the moving party's pleadings.  See id.  The court need not, however, "accept allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002).  "When a plaintiff is the moving party, 'the plaintiff may not secure a judgment on the pleadings when the answer raises issues of fact that, if proved, would

defeat recovery.'" Kondaur Capital Corp. v. Cajuste, 849 F. Supp. 2d 363, 366 (E.D.N.Y. 2012) (quoting 5C Wright & Miller, Federal Practice and Procedure, § 1368 (3 ed. 2009)).  In resolving a Rule 12(c) motion, the court may consider instruments or documents attached to the pleadings, "as well as [documents] attached to the motion . . . so long as they are integral to the [pleadings] and authentic."  Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013).

### III.  Discussion

As a threshold matter, the court notes that there appears to be a dispute between the parties regarding the scope of the 2015 Consent and Amendment Agreement (the "Agreement") between Pocahontas Land Corporation, Rockwell, and Blackhawk Land and Resources, which contains an amendment to Article Sixteen's consent restriction as earlier quoted.  In its opening brief, Rockwell passively asserts in a footnote, without elaboration, that the Agreement, by its own terms, is only applicable to the Rockwell-Blackhawk Land and Resources/Blackhawk Land and Resources-Coronado subleased seam of coal and the leasehold estate therein.  See ECF 40 at 1, n.1.

In its response brief, Pocahontas Land does not directly address this contention, but appears to take the

position that the Agreement -- and the amendment to the consent restriction -- is applicable to the 1937 Lease between it and Rockwell.  See ECF 41 at 3.  It is not until Rockwell's reply that it elaborates on its earlier contention regarding the applicability of the Agreement.  Indeed, in its reply brief, Rockwell sets forth a textual analysis that it believes supports the conclusion that the Agreement, and amendment to the consent restriction therein, is inapplicable to its obligations under the 1937 Lease.  See ECF 44 at 8-9.  A part of this textual analysis includes Rockwell's interpretation of the last three "Whereas" clauses of the Agreement, which it contends makes plain that the Agreement is applicable only to the Rockwell-Blackhawk Land and Resources/Blackhawk Land and Resources-Coronado subleased seam of coal.  See id. at 8.

Inasmuch as Rockwell's textual interpretation of the Agreement was not specifically raised until its reply brief, the court declines to conclusively address the issue at this time. See Moseley v. Banker, 550 F.3d 312, 325 n.7 (4th Cir. 2008) (noting "[a]s a general rule, arguments not specifically raised and addressed in opening brief, but raised for the first time in reply, are deemed waived.") (emphasis added); see also, Huskey v. Ethicon, Inc., 29 F. Supp. 3d 736, 745 n.4 (S.D.W. Va. 2014) (stating "an argument raised for the first time in a reply brief

or memorandum will not be considered."). Nonetheless, the court notes, without concluding, that there may be an ambiguity as to the scope of the 2015 Agreement. At this stage, there remains a question of fact as to whether the Agreement, and the amendment to the consent restriction therein, is applicable generally to Rockwell's obligations under the 1937 Lease. It is suggested that the parties explore the binding scope and effect of the Agreement and the amended consent restriction at the summary judgment stage of this case, together with all other related issues. Until the scope of the Agreement and the amendment is fully considered, however, the court concludes that its addressing the remainder of the parties' contentions, including the applicability of the Supreme Court of Appeals of West Virginia's decision in <u>Easley Coal Co. v. Brush Creek Coal Co.</u>, 91 W. Va. 297, 112 S.E. 512 (1922), would be premature.

### IV. Conclusion

Based on the foregoing discussion, it is ORDERED that Rockwell's motion for partial judgment on the pleadings (ECF 39) is DENIED.

**The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties**

          **ENTER: October 15, 2021**

          John T. Copenhaver, Jr.
          Senior United States District Judge