UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

ROCKWELL MINING, LLC and
BLACKHAWK LAND AND RESOURCES, LLC,

      Plaintiffs,

v.                        Civil Action No. 2:20-cv-00487

POCAHONTAS LAND LLC,

      Defendant.

MEMORANDUM OPINION AND ORDER

      Pending is Defendant Pocahontas Land LLC's
("Pocahontas Land") motion to strike rebuttal expert disclosures
(ECF 80) of Rockwell Mining, LLC ("Rockwell") and Blackhawk Land
and Resources, LLC ("Blackhawk Land"), filed October 12, 2021.
Rockwell and Blackhawk Land (collectively "plaintiffs")
responded in opposition (ECF 92) on October 26, 2021, to which
Pocahontas Land replied (ECF 97) on November 2, 2021.

I.  Background

      Plaintiffs instituted this action on July 17, 2020,
regarding an Indenture of Lease dated July 1, 1937.  See ECF 1.
Plaintiffs seek declaratory judgment that the merger transaction
involving Blackhawk Mining -- a parent company of Rockwell and

Blackhawk Land -- and Sev.en US Met Coal Inc. -- the parent company of the entity with which Blackhawk Mining merged -- did not constitute an assignment triggering Pocahontas Land's consent under the terms of the Lease.  See id. at ¶¶ 16, 45. Alternatively, assuming consent was required, plaintiffs seek a declaration that there was no reasonable basis for Pocahontas Land to withhold its consent.  See id. at ¶ 49.

On October 2, 2020, Pocahontas Land answered, denying the complaint's material allegations.  See ECF 11.  Pocahontas Land also counterclaimed, seeking declaratory judgment regarding (Count I) reformation of the 1937 Lease's royalty clause, (Count II) consent to transfer of control of Rockwell under the 1937 Lease, and (Count III) consent to mortgages of the 1937 Lease.[1] See id. at ¶¶ 74-107.

Following a sixty-day extension of the original scheduling order, on May 20, 2021, the court -- upon the parties' joint motion to extend the schedule -- entered a second amended scheduling order, which established, inter alia, the deadlines for expert witness disclosures.  See ECF 54.  The schedule established that opening Rule 26 expert disclosures

---

[1] Count IV of Pocahontas Land's counterclaim was dismissed along with its voluntary dismissal of third-party defendants Blackhawk DRE, LLC, Blackhawk Mining, LLC, and Hampden Coal, LLC.  See ECF 29.

were due July 30, 2021; responsive expert disclosures were due August 27, 2021; and rebuttal expert disclosures were due September 10, 2021, with discovery to close on September 30, 2021.[2]  See id. at 2.  Subsequently, on September 3, 2021, the parties jointly moved for a three-week modification to the schedule.  See ECF 68.  The court granted the motion and entered a third amended scheduling order on September 9, 2021.  See ECF 69.  This schedule was entered after the opening and responsive

---

[2] Local Rule of Civil Procedure 26.1(b) provides as follows:

> Unless otherwise ordered or stipulated by the parties, the making, sequence, and timing of disclosures under FR Civ P 26(a)(2) will be as follows:
>
> (1) the party bearing the burden of proof on an issue shall make the disclosures required by FR Civ P 26(a)(2)(A) and (B) for that issue to all other parties or their counsel no later than 60 days prior to the discovery completion date;
>
> (2) the party not bearing the burden of proof on an issue shall make the disclosures required by FR Civ P 26(a)(2)(A) and (B) for that issue to all other parties or their counsel no later than 30 days prior to the discovery completion date; and
>
> (3) all parties shall provide no later than 14 days prior to the discovery completion date the disclosures required by FR Civ P 26(a)(2)(A) and (B) if the evidence is intended solely to contradict or rebut evidence on the same issue identified by another party under FR Civ P 26(a)(2)(B).

The court's three-tiered expert disclosure deadlines set forth in the schedule are thus structured in accord with LR. Civ. P. 26.1(b).

expert witness disclosure deadlines had lapsed and thus only extended the rebuttal expert disclosure deadline to October 7, 2021, with discovery to close on October 21, 2021.  See id.

Plaintiffs and Pocahontas Land both timely submitted their opening expert witness disclosures on July 30, 2021.  See ECF Nos. 58, 59.  Plaintiffs, who bear the burden of proof on the allegations in the complaint, disclosed one expert witness, Dr. John Craynon, who was retained by plaintiffs "to provide testimony and opinions on the coal lease in question, with regard to, among other things, the historical context in the mining industry, royalty, minimum royalty, and related financial terms in the lease."  ECF 81, Ex. A at 4.

Pocahontas Land, who bears the burden of proof on the allegations in the counterclaim, disclosed two expert witnesses, Mr. Seth Schwartz and Dr. Frank Scott.  Mr. Schwartz was retained by Pocahontas Land "to provide expert testimony regarding the royalty rates" in the 1937 Lease.  ECF 81-2, Ex. C at 3.  Dr. Scott was retained by Pocahontas Land "to analyze the market for coal in southern West Virginia prior to and at the time of the signing of the 1937 Lease, and to explore and explain the economic relationship between the [original] parties [,Loup Creek Colliery Company (lessor) and The Koppers Coal Company (lessee),] when they entered into the Lease."  ECF 81-1,

4

Ex. B at 1.  Dr. Scott's report served to provide "an analysis of whether the 1937 Lease should be viewed as an arms-length agreement between two unrelated parties, each carefully looking out for their own short-run and long-run economic interests, or as merely an internal transaction between two related parties, each serving the greater economic interests of their controlling parent."  Id. at 1-2.  The opinions of Mr. Schwartz and Dr. Scott support Pocahontas Land's counterclaim for reformation.

On August 27, 2021, the deadline for responsive expert disclosures, Pocahontas Land served two responsive expert reports[3] by Mr. Schwartz and Dr. Scott, both of which addressed the opinions of plaintiffs' expert, Dr. Craynon, in his opening report.  See ECF 67.  Plaintiffs did not submit any responsive expert disclosures.  Then, on October 7, 2021, the deadline for rebuttal expert disclosures, plaintiffs served two rebuttal reports, one by their previously disclosed expert, Dr. Craynon, and one by a previously undisclosed expert, Michael Ferguson.  Dr. Craynon's report purports to rebut the opinions of Pocahontas Land's expert, Mr. Schwartz, while Mr. Ferguson's report purports to rebut the opinions of Dr. Scott.  See ECF

---

[3] The responsive reports are titled "rebuttal reports."

Nos. 81-4, 81-5.  The reports were disclosed after plaintiffs
deposed Pocahontas Land's experts.

On October 12, 2021, Pocahontas Land filed the subject
motion to strike plaintiffs' rebuttal disclosures as untimely
and, additionally, as improper rebuttal evidence.  Specifically,
Pocahontas Land contends that the rebuttal disclosures of Dr.
Craynon and Mr. Ferguson should have been disclosed on the
responsive disclosure deadline given that their reports are
intended to respond to the issues raised in the opening reports
of Mr. Schwartz and Dr. Scott, issues on which plaintiffs do not
bear the burden of proof.  Pocahontas Land thus asserts that the
expert opinions contained in plaintiffs' rebuttal expert
disclosures should be stricken on this basis.

Pocahontas Land also avers that the rebuttal reports
of plaintiffs' experts exceed the scope of rebuttal, and one
report (i.e., only Mr. Ferguson's) contains improper legal
conclusions.  As to Dr. Craynon, Pocahontas Land contends his
opinions exceed the scope of a rebuttal opinion inasmuch as Dr.
Craynon's report addresses subjects not opined upon by Mr.
Schwartz in an attempt to bolster Dr. Craynon's opening
opinions, thus warranting the striking of his rebuttal report.
As to Mr. Ferguson, Pocahontas Land contends the first two
opinions in his report contain several improper legal

6

conclusions and also fail to rebut any opinion made by Dr. Scott.  Pocahontas Land avers Mr. Ferguson's first two opinions contained in his rebuttal report should thus be stricken.  Id. at 10-11.  Plaintiffs respond that the rebuttal reports of its experts are timely inasmuch as "both reports rebutted Poca[hontas] Land's expert reports and did not address Poca[hontas] Land's counterclaims."  ECF 92 at 11.  Plaintiffs further contend neither of its experts' reports exceed the scope of a rebuttal opinion, nor does Mr. Ferguson's report draw any legal conclusions.  Id.  They thus request that Pocahontas Land's motion to strike be denied.  The court will address each of these contentions in turn.

## II.  Discussion

### A.  Timeliness of Disclosures

Pursuant to Federal Rule of Civil Procedure 37(c), upon a party's failure to disclose a witness as required under Rule 26(a), "the party is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Our court of appeals has identified five factors to be utilized in determining whether a party's failure to disclose is substantially justified or harmless: "(1) surprise to the party

against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony." <u>Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.</u>, 318 F.3d 592, 597 (4th Cir. 2003) (quoting <u>Rambus, Inc. v. Infineon Technologies AG</u>, 145 F. Supp. 2d 721, 726 (E.D.Va. 2001) (internal citations and quotation omitted)).

The parties first dispute whether the disclosures of plaintiffs' rebuttal experts -- Mr. Ferguson and Dr. Craynon -- should have been disclosed on the deadline for responsive disclosures or whether they were timely served on the rebuttal disclosure deadline.

Pocahontas Land contends that plaintiffs -- as the party not bearing the burden of proof on the subjects of Mr. Schwartz and Dr. Scott's opinions -- were required to make expert disclosures for those issues on the responsive expert disclosure deadline of August 27, 2021.  In other words, Pocahontas Land contends plaintiffs' rebuttal disclosures were untimely inasmuch as plaintiffs' "October 7 rebuttal expert disclosures were intended to rebut the evidence presented in Mr. Schwartz's and Dr. Scott's <u>initial</u> reports, and thus were

required to be made on the responsive expert disclosure deadline of August 27, as dictated by the scheduling order, and both the Federal and Local Rules." ECF 80 at 5 (emphasis added). Pocahontas Land asserts exclusion is the proper remedy inasmuch as the late disclosures deprived it of an opportunity to present any rebuttal analysis of plaintiffs' experts' opinions. Specifically, it asserts that the disclosures were a surprise "as they contained responses to Dr. Scott's and Mr. Schwartz's initial opinions" and "were made more than one month after their deadline." ECF 80 at 7. Pocahontas Land avers the surprise is uncurable inasmuch as the disclosures were made on October 7, 2021, and the discovery deadline is October 21, 2021, and thus "there is no time for [it] to depose the newly-disclosed expert [Mr. Ferguson] or rebut opinions on the issues for which it has the burden of proof."[4] Id. Lastly, Pocahontas Land notes that plaintiffs have failed to offer an explanation "for its failure

---

[4] According to its notice of deposition filed October 7, 2021, Pocahontas Land deposed Dr. Craynon on October 19, 2021. See ECF 78. The day after Pocahontas Land filed the subject motion, it noticed the deposition of Mr. Ferguson to occur on October 21, 2021. See ECF 82. In Pocahontas Land's reply brief, filed November 2, 2021, it contends that "[a]lthough [it] has deposed both experts, Poca[hontas] Land was not able to spend sufficient time preparing to rebut these reports and was denied the opportunity to offer its own rebuttal disclosures to what should have been [plaintiffs'] responsive disclosures" and that "[t]his is particularly prejudicial with respect to [Mr.] Ferguson, who was disclosed as a brand-new witness and previously unknown to Poca[hontas] Land." ECF 97 at 4.

to disclose responsive expert disclosures on" the August 27, 2021, deadline.  Id. at 8.

Plaintiffs respond that Pocahontas Land incorrectly conflates the responsive and rebuttal expert disclosure deadlines.  Specifically, plaintiffs aver that rebuttal reports respond to the expert reports of the opposing party, not their claims.  Plaintiffs thus assert that because its experts' rebuttal reports "do not present opinions on Poca[hontas] Land's counterclaims, on which Plaintiffs do not bear the burden of proof" but, rather, only rebut Pocahontas Land's experts' reports, they were timely submitted rebuttal disclosures.  ECF 94 at 4.

In support of its untimeliness contention, Pocahontas Land relies on Conner v. Associated Radiologists, Inc., No. 2:19-cv-00329, 2021 WL 535409 (S.D.W. Va. Feb. 12, 2021), in which Chief Judge Johnston addressed a similar circumstance.  In Conner, the plaintiff timely disclosed his opening expert witness disclosure.  Id. at *1.  The defendants, despite bearing the burden of proof on the allegations contained in their counterclaim, failed to serve any opening expert disclosures. Id.  The defendants further failed to disclose any responsive expert disclosures on the deadline for disclosures by the party not bearing the burden of proof on an issue.  Id.  The plaintiff

did not submit another disclosure inasmuch as its opening disclosure addressed the defendants' counterclaim "and to file another disclosure would have been redundant." Id. Then, on the deadline for disclosing rebuttal expert witnesses, the defendants disclosed an expert who intended to present opinions on plaintiff's ERISA claims, claims on which the defendants did not bear the burden of proof. Id. at *2. In moving to strike the defendants' rebuttal disclosure as untimely, the plaintiff contended that the court's expert disclosure deadlines -- structured identically to the disclosure deadlines herein -- were "structured such that the disclosure of experts by parties on which the party does not bear the burden of proof serves as 'responsive documents' to the initial expert disclosure." Id. That way, "all parties to the action are then afforded the opportunity to designate a final rebuttal expert prior to the final expert disclosure deadline." Id. (internal quotations omitted).

The court in Conner concluded that plaintiff's interpretation of the schedule was "exactly right" and found the defendants' disclosure to be untimely inasmuch as their expert intended to present opinions on issues on which the defendants did not bear the burden of proof and thus should have been disclosed on the responsive expert disclosure deadline. Id.

The court further concluded that the defendants' last minute rebuttal expert filing "violated the spirit" of the court's schedule inasmuch as the late disclosure deprived the plaintiff of the same benefit of the rebuttal expert deadline given that they were left with no expert opinion to rebut.  <u>Id.</u> at *3. After analyzing the <u>Southern States</u> factors, the court ultimately found the late disclosure was neither harmless nor justified and concluded that the defendants were precluded from using the expert or the expert's report to supply evidence on a motion, at a hearing, or at trial.  <u>Id.</u> at *4.

Pursuant to Rule 26(a)(2)(D), parties are required to make expert disclosures "at the times and in the sequence that the court orders."  Here, the court's responsive expert disclosure deadline, in accord with Local Rule of Civil Procedure 26.1(b), required "the party not bearing the burden of proof on an issue" to make expert disclosures "for that issue" on August 27, 2021.  LR. Civ. P. 26.1(b)(2).  As explained in <u>Conner</u>, the court's scheduling order is structured so that such disclosures serve as "responsive documents" to the opening expert disclosures, which then affords "all parties . . . the opportunity to designate a final rebuttal expert prior to the final expert disclosure deadline."  <u>Conner</u>, 2021 WL 535409 at *2 (internal quotations omitted).  Simply put, the responsive

disclosures serve as responses to the opening expert disclosures, and the rebuttal disclosures serve to permit all parties the opportunity for its experts to refute the opposing party's responsive reports.

The "rebuttal reports" of plaintiffs' experts chiefly respond to the opinions made by Pocahontas Land's experts in their opening reports. For instance, the third and fourth opinions supplied in Mr. Ferguson's report addressing whether Dr. Scott's report (1) "present[ed] evidence to support the assertion that due to asserted control by the Mellon family, 'it did not matter economically what the stipulated royalty rate was,'" and (2) "present[ed] any evidence that the 1937 Lease was not negotiated on arms[-]length terms," specifically quote and respond to opinions set forth in Dr. Scott's opening expert report. ECF 81-5 at 8, 11.

Similarly, as plaintiffs point out in their response brief, Dr. Craynon's rebuttal report purports to address Mr. Schwartz's opinion regarding the market conditions present at the time of the 1937 Lease as set forth in his opening expert report. See ECF 92 at 4 (quoting a portion of Mr. Schwartz's opening expert report (ECF 81-2 at 3)). The court thus agrees that plaintiffs' rebuttal reports should have been filed on the responsive expert disclosure deadline, rendering them untimely. Furthermore, as in Conner, plaintiffs' failure to abide by the

responsive disclosure deadline "violated the spirit" of the court's schedule and deprived Pocahontas Land of the opportunity to rebut the opinions raised by plaintiffs' experts in what should have been their responsive reports.

The court's inquiry, however, does not end with the finding that plaintiffs' disclosures were untimely.  It must next determine whether plaintiffs' untimeliness is excused under the factors set forth in <u>Southern States</u>.  While Pocahontas Land avers that it was surprised by plaintiffs' late disclosures, the court concludes any surprise was minimized by the fact that Pocahontas Land was able to depose both Mr. Craynon and Mr. Ferguson after plaintiffs disclosed their late reports. Moreover, trial in this matter has been continued until May 17, 2022, thus providing additional time for Pocahontas Land to sufficiently prepare its experts.  Accordingly, the court concludes the untimeliness was harmless and does not warrant the striking of plaintiffs' rebuttal expert disclosures.

## B.  <u>Scope of Plaintiffs' Experts' Rebuttal Opinions</u>

Rebuttal evidence is defined as "evidence given to explain, repel, counteract, or disprove facts given in evidence by the opposing party."  <u>United States v. Stitt</u>, 250 F.3d 878, 897 (4th Cir. 2001) (quoting Black's Law Dictionary 1267 (6th ed. 1990)).  In other words, "[o]rdinarily, rebuttal evidence

may be introduced only to counter new facts presented in the defendant's case in chief." Allen v. Prince George's Cnty., Md., 737 F.2d 1299, 1305 (4th Cir. 1984). "Permissible rebuttal evidence [may] also include[] evidence unavailable earlier through no fault of the plaintiff." Id.

"[A] party may not offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief." Wise v. C.R. Bard, Inc., No. 5:18-cv-01378, 2015 WL 461484, at *2 (S.D.W. Va. Feb. 3, 2015) (internal citations omitted). "Expert reports that simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper rebuttal or reply reports." Keystone Transportation Solutions, LLC v. Northwest Hardwoods, Inc., No. 5:18-cv-00039, 2019 WL 1770162, at *6 (W.D. Va. Apr. 22, 2019) (internal citations omitted).

### 1.  Dr. Craynon's Rebuttal Opinion

Pocahontas Land contends that Dr. Craynon's opinions contained in his rebuttal report neither contradict nor rebut Mr. Schwartz's opinions and thus exceed the scope of rebuttal. Specifically, Pocahontas Land notes that Dr. Craynon purports to rebut Mr. Schwartz's opinion that the ten cents per ton royalty term in the 1937 Lease is unreasonable by opining on the Lease's

15

annual $100,000 minimum rental rate.[5]  Pocahontas Land asserts, however, that Mr. Schwartz's opinions were confined only to the royalty rate and did not address the minimum rental rate. According to Pocahontas Land, Dr. Craynon's rebuttal report is an "attempt to supplement his initial report with an opinion that the $100,000 minimum rental neutralized the risk to the lessor and provided the lessor with a benefit [and] should not be permitted."  ECF 80 at 9.

In response, plaintiffs note that Mr. Schwartz provided the following opinion in his opening expert report:

> At the time the 1937 Lease was signed, the country was mired in the Great Depression.  Prices for coal and other products had fallen well below the levels of a decade earlier and the government took a variety of actions to prevent price deflation, including fixing minimum prices for coal.  The fixed royalty per ton in the 1937 Lease was equivalent to a percentage royalty rate of 5-6% based on coal prices prevailing in the market at the time.

ECF 92 at 4 (quoting ECF 81-2 at 2).  Plaintiffs contend that while Dr. Craynon noted in his report that he concurred with Mr. Schwartz's observation, he rebuts this opinion by pointing out "that the conditions present at the time of the 1937 Lease outlined by Mr. Schwartz also contributed to the parties setting

---

[5] Pocahontas Land notes that Dr. Craynon mischaracterizes the "minimum rental rate" as the "minimum royalty rate" in his report.  See ECF 80 at 9.  In the Lease, the rate appears to be referred to as the "minimum rental rate;" thus, the court will refer to it as such herein.  See ECF 39-1 at 27.

a minimum [rental] rate of $100,000," which "ensured that the lessor would be paid a fair return and g[a]ve the lessee motivation to produce coal at a sufficient quantity to make the burden of paying the minimum [rental] worthwhile." ECF 92 at 5 (citing ECF 84-1). Plaintiffs contend "it is vital" to consider all of the Lease's terms, including the minimum rental rate, when discussing the conditions in 1937 impacting the Lease's terms. Plaintiffs thus contend Dr. Craynon's report is a true rebuttal.

Pocahontas Land replies that Dr. Craynon's opinion as to why the minimum rental rate was established goes far beyond Mr. Schwartz's opinion regarding the royalty rate's commercial reasonableness. It also notes that Dr. Craynon discussed both the market conditions in 1937 and the $100,000 minimum rental rate in his opening report. Pocahontas Land thus contends Dr. Craynon's purported rebuttal opinion regarding the minimum rental rate "is simply an attempt to bolster his original opinion, rather than rebut Mr. S[ch]wartz's opinion." ECF 97 at 5.

Upon review of both reports, the court agrees with the plaintiffs' assessment. As noted, Mr. Schwartz's initial report opines on the economic conditions in 1937, the impact of those conditions on the Lease's royalty rate, and the unreasonableness

of the royalty rate today.   In order to further explain and counteract these points, Dr. Craynon opines in his rebuttal report that the market conditions in 1937 also contributed to the parties setting the annual $100,000 minimum rental rate, the purpose of which, he avers, was to ensure that the lessor was provided a fair return given the market conditions at that time.   Inasmuch as a fair assessment of Mr. Schwartz's initial opinions would reasonably encompass consideration of the Lease's minimum rental rate, the court concludes Dr. Craynon's report is within the scope of a proper rebuttal opinion.

### 2.   Mr. Ferguson's Rebuttal Opinion

Mr. Ferguson's rebuttal report purports to refute Dr. Scott's report and provides opinions on the following questions:

> (1) What is the effect of a corporate merger with regard to the merger parties; (2) What is the status of Rockwell as the successor to the Lessee interest; (3) [Whether] the Scott Report present[s] any evidence to support the assertion that due to asserted control by the Mellon Family, 'it did not matter economically what the stipulated royalty rate was;' and (4) [Whether] the Scott Report present[s] any evidence that the 1937 Lease was not negotiated on arms length terms.

ECF 81-5 at 4, 7, 8, 11.   Pocahontas Land first avers Mr. Ferguson's expressed opinions on the first two questions fail to rebut any opinion made by Dr. Scott.   Plaintiffs respond, however, that Mr. Ferguson critiques both Dr. Scott's methodology and his conclusions.

As to Mr. Ferguson's opinion on the first question, plaintiffs contend he responds directly "to Dr. Scott's failure to analyze the merger between Loup Creek and Pocahontas Land Corporation when considering the relationships between the parties."  ECF 92 at 6.  The court agrees.  Mr. Ferguson specifically notes in his report that "Dr. Scott's testimony conceded that he did not place any particular significance on the legal status of the merger of Loup Creek into Poca, treating it instead as a general 'acquisition' for economic purposes," which, Mr. Ferguson then opines, is "not correct as to the legal acts taken[.]"  ECF 81-5 at 4, 5.  Mr. Ferguson goes on to opine that "because Poca Land is the successor by merger to the original Lessor, when analyzing the 'equities involving the status and negotiation of the 1937 Lease, Poca, the Defendant in this action, is equally the same entity as Loup Creek, the original lessor.'"  ECF 92 at 6 (quoting 81-5 at 7). Accordingly, Mr. Ferguson's first opinion is "given to explain, repel, counteract, or disprove" the opinions expressed by Dr. Scott and is thus a proper rebuttal opinion.  Stitt, 250 F.3d at 897.

As to Mr. Ferguson's opinion on the second question, plaintiffs contend it "similarly responds to Dr. Scott's failure to analyze the status of Rockwell as the successor to the Lessee

interest." ECF 92 at 6. In response to the second question addressed in the report, Mr. Ferguson opines that "[u]nlike Poca, Blackhawk is a 'legal stranger' to and not in any sense a successor of or the same party as Koppers Coal, the original Lessee in 1937."[6] ECF 81-5 at 7. He further opines that given this relationship, "Rockwell, as a purchaser having acquired assets in an arms length transaction, paid fair value for those assets — which would include all terms of the 1937 Lease — as bargained for elements of that purchase." Id. Plaintiffs reasonably assert that "Mr. Ferguson discusses these points in response to Dr. Scott's initial opinion regarding the relationships between the lessor and lessee to the 1937 Lease." ECF 92 at 6.

Pocahontas Land, however, appears to take issue with Mr. Ferguson's second opinion regarding "the status of Rockwell and Blackhawk in the Sev.en transaction." ECF 97 at 7. Regarding that transaction, Mr. Ferguson opines:

> It is also perhaps relevant that this same concept leads to a different conclusion concerning the status of Rockwell and Blackhawk in the Sev.en transaction.

---

[6] Pocahontas Land also contends that "plaintiffs are estopped from arguing that Rockwell and Blackhawk are not successors to the 1937 Lease" inasmuch as "[p]aragraph 12 of [plaintiffs] Complaint for Declaratory Relief states, 'Through various assignments and/or conveyances, Rockwell and Blackhawk Land are the successor lessees under the 1937 Lease." ECF 80 at 10 (quoting ECF 1). This issue is one that may better be dealt with by the court at the summary judgment stage.

> In that case, after that shareholder level event,
> there is only a single corporation with the identity
> of managers and directors the same.  In essence,
> following that event, the entity continued unaffected
> in the same operations and management of its business.
> Thus, the principles of Jordan, also support the
> proposition that this 'new' Blackhawk is the same
> entity as the former Blackhawk.

ECF 81-5 at 8.  Pocahontas Land asserts that Dr. Scott at no point opined on the Sev.en transaction in his report. Pocahontas Land further notes that Mr. Ferguson conceded during his deposition that he was not asked to opine on the Sev.en transaction and it "was just something that [he] just added [in] the report."  ECF 97-1 at 6.  He further testified this information was not "really part of [his] direct conclusion and probably could have just as well been a footnote" and that he "was simply drawing a distinction in the factual situation based on [his] understanding of the pleadings."  Id.

The court declines to offer a definitive ruling on the scope of Mr. Ferguson's opinion regarding the Sev.en transaction at this time but may consider the matter at the summary judgment stage or, upon objection, at trial.

C.   <u>Legal Conclusions in Mr. Ferguson's Report</u>

      Our court of appeals has held that "opinion testimony
that states a legal standard or draws a legal conclusion by
applying law to the facts is generally inadmissible."  <u>United
States v. McIver</u>, 470 F.3d 550, 562 (4th Cir. 2006); <u>see also</u>
<u>Long v. Blair</u>, No. 2:09-0349, 2010 WL 1930219, *2 (S.D.W. Va.
May 12, 2010) (noting the Fourth Circuit "has observed that
expert witnesses are generally precluded from opining on the law
governing the case") (citing <u>Adalman v. Baker Watts & Co.</u>, 807
F.2d 359, 366 (4th Cir. 1986), <u>disapproved on other grounds</u> in
<u>Pinter v. Dahl</u>, 486 U.S. 622 (1988)).

      Pocahontas Land contends "Mr. Ferguson, an attorney,
drafted his opinion largely in the form of a legal brief —
setting forth West Virginia law, applying facts to the law, and
reaching legal conclusions."  ECF 80 at 10.  Specifically, again
in regard to Mr. Ferguson's first and second opinions,
Pocahontas Land asserts Mr. Ferguson cites caselaw and "his
opinions cover the legal difference between mergers and
acquisitions, an interpretation of the West Virginia Business
Corporation Act and related court opinions, and an application
of the bona fide purchaser doctrine."  ECF 97.

      Plaintiffs aver, on the other hand, that Mr.
Ferguson's opinions "contain[] only the factual scenario by

which each party become a successor-in-interest to the 1937 Lease" and that plaintiffs "will demonstrate that Poca[hontas] Land is a successor by merger and Rockwell is a successor by bona fide purchase by arguing that such is the case on the basis of relevant law using the facts presented in Mr. Ferguson's rebuttal report."  ECF 92 at 9, 10.

Pocahontas Land replies that plaintiffs' assertion that Mr. Ferguson's first two opinions only contain factual analysis "is blatantly belied by the statements made in his report and his admissions during his deposition."  ECF 97 at 6. Pocahontas Land notes that Mr. Ferguson admitted in his deposition that his opinions on these points amount to legal conclusions.  For instance, Mr. Ferguson agreed in his deposition that Dr. Scott's opinions "focused on [the] economic relationships of the parties and did not focus on the legal analysis or the legal structure of the parties."  ECF 97-1 at 3. Then, when Mr. Ferguson was asked about his opinions and whether he "took certain facts and . . . relied on various legal authorities and rendered a conclusion," Mr. Ferguson responded, "Yes."  ECF 97-1 at 4.

The court declines to parse the contents of Mr. Ferguson's expert report to determine which of his statements amount to improper legal conclusions.  The law is clear that Mr.

Ferguson will not, as a general rule, be permitted to offer legal conclusions at trial.

### III.  Conclusion

Based on the foregoing discussion, it is ORDERED that Pocahontas Land's motion to strike rebuttal expert disclosures (ECF 80) is DENIED.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: February 22, 2022

John T. Copenhaver, Jr.
Senior United States District Judge

24